| | |
|---|---|
| **BARTHEL & BARTHEL, APC** | **LOKER LAW, APC** |
| Nicholas Barthel, Esq. (319105) | Matthew M. Loker, Esq. (279939) |
| nick@barthelbarthel.com | matt@loker.law |
| 2173 Salk Ave., Ste. 250 | 1303 East Grand Avenue, Suite 101 |
| Carlsbad, CA 92008 | Arroyo Grande, CA 93420 |
| Telephone: (760) 259-0033 | Telephone: (805) 994-0177 |
| Facsimile: (760) 536-9010 | Facsimile: (805) 994-0197 |

*Attorney for Plaintiff*
*Pamela MacDonald*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PAMELA MACDONALD,** | Case No.:  '22CV1434 BEN BGS |
| Plaintiff | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** |
| v. | **A. CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT;** |
| **SYNCHRONY BANK,** | **B. ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT;** |
| Defendant | **C. CALIFORNIA IDENTITY THEFT ACT;** |
| | **D. TRUTH IN LENDING ACT;** |
| | **JURY TRIAL DEMANDED** |

**CASE NO.:**                                                                                               *Pamela MacDonald v. Synchrony Bank*
**COMPLAINT**

## INTRODUCTION

1. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices. Cal. Civ. Code §§ 1788.1 (a)-(b).

2. The United States Congress has also found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

3. In enacting the California's Identity Theft Act, Cal. Civ. Code §§1798.92 *et seq.* ("CITA"), the California Legislature found that the right to privacy was being threatened by the indiscriminate collection, maintenance, and dissemination of personal information. Accordingly, CITA was enacted to combat the lack of

effective laws and legal remedies in place. To protect the privacy of individuals, it is necessary that the maintenance and dissemination of personal information be subject to strict limits. Cal. Civ. Code §1798.1(a), (c).

4. Congress enacted the Truth in Lending Act ("TILA") in response to "widespread consumer confusion about the nature and cost of credit obligations." *Gennuso v. Commercial Bank & Tr. Co.*, 566 F.2d 437, 441 (3d Cir. 1977). TILA was designed to require full disclosure of credit charges so that the consumer can decide for himself whether the charge is reasonable, and if a charge was unauthorized, requires a credit card issuer to satisfy certain conditions before holding a cardholder liable for the unauthorized use. 15 U.S.C. § 1643. This ideal was expanded with the Fair Credit Billing Act, which requires a creditor to comply with certain obligations when a consumer has asserted that her billing statement contains an error. 15 U.S.C. § 1666.

5. Pamela MacDonald ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of SYNCHRONY BANK ("Synchrony") with regard to attempts by Synchrony to unlawfully and abusively collect a fraudulent debt from Plaintiff, inclusive of inaccurate credit reporting and this conduct caused Plaintiff damages.

6. Plaintiff make makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

7. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

8. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

9. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such

| CASE NO.: | 2 OF 14 | *Macdonald v. Synchrony* |

**COMPLAINT**

violation.

10. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

## JURISDICTION AND VENUE

11. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 due to federal causes of action under 15 U.S.C § 1640, 15 U.S.C. § 1681; and, 28 U.S.C. § 1367 for supplemental state claims.

12. This action arises out of Defendant's violations of the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1, et seq. ("CCCRAA"); the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, et seq. ("RFDCPA"); California Identity Theft Act, Cal. Civ. Code §§ 1798.82, et seq. ("CITA"); and Truth in Lending Act, 15 U.S.C §§ 1601, et seq. ("TILA")

13. Because Defendant conduct business within the State of California, personal jurisdiction is established.

14. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

15. Plaintiff is senior citizen and a natural person who resides in San Diego, California, from whom Synchrony sought to collect a consumer debt that was alleged to be due and owing from Plaintiff.

16. Synchrony is a bank operating from the State of Utah.

## FACTUAL ALLEGATIONS

17. Plaintiff is an elderly woman that takes care of her sickly husband.

18. Unfortunately, Plaintiff's daughter ("Daughter") suffers from drug addiction.

19. In mid-2021, Daughter was able to sober up and get her life together.

20. In 2021, Plaintiff allowed Daughter to stay at her residence with her husband because Daughter would have been homeless otherwise.

21. Unfortunately, towards the end of 2021, Daughter began to start using drugs again without Plaintiff knowing.

22. When Plaintiff began suspecting that Daughter was using drugs again, Plaintiff started hiding her purse under her bed so that her daughter would not be able to find her purse.

23. On or about December 14, 2022, Plaintiff awoke in the morning to find that her purse was on the kitchen counter and Daughter was nowhere to be found.

24. Although Daughter physically stole some items from Plaintiff's purse, Daughter did not physically take Plaintiff's Synchrony credit card for account ending in 5325.

25. Unbeknownst to Plaintiff at the time, Daughter had copied the card numbers and began rerouting the billing statements to other addresses.

26. Between December 22, 2021 and January 21, 2022, Daughter incurred approximately $1,228 in debt through unauthorized purchases.

27. Plaintiff did not know—and could not have known—Daughter was using her card because Plaintiff was not receiving any statements in the mail and does not own a computer. Plaintiff also never uses this credit card and thus never had monthly payments to make on it.

28. In June 2022, Plaintiff received a call from Synchrony stating that she owed an outstanding balance. This was the first time that Plaintiff became aware that Daughter was using their credit card.

29. Plaintiff explained on the phone that she was a victim of identity theft and that Daughter must have used the credit card.

30. The Synchrony representative informed Plaintiff that she needed to file out an identity theft form and that Synchrony would send Plaintiff a form to fill out.

31. On or about July 17, 2022, Plaintiff received Synchrony's identity theft form and filled it out by noting that every charge on the credit card between December 22, 2021, and January 21, 2022 was unauthorized.

32. Additionally, Plaintiff identified Daughter as the suspect that used the card. Plaintiff also described that the purchases were done on a computer or other means to make the purchases since the card was still in Plaintiff's possession at the time of purchase.

33. Plaintiff also explained that she had just become aware of the debt recently and was not receiving any statements in the mail for some reason.

34. In addition to including the investigating officer's name, law enforcement agency, and case number, Plaintiff also attached a copy of the police report that she had filled out, which also identified Daughter as the suspect.

35. On or about July 18, 2022, Plaintiff faxed all of these documents to Synchrony through the fax number that they provided.

36. On July 26, 2022, Synchrony denied Plaintiff's dispute via a template letter that a list of reasons Synchrony could reject a dispute. Synchrony simply placed a check next to "You authorized, participated in, or benefited from the purchase" with no other explanation provided.

37. Soon thereafter, Plaintiff received a statement from Synchrony demanding payment on the fraudulent debt.

38. On or about July 26, 2022, Synchrony furnished to Experian that Plaintiff's account was 30 days past due.

//

39. Synchrony will continue to report this account as being past due every thirty days.

40. Despite receipt of Plaintiff's disputes, Synchrony inaccurately report that Plaintiff owed the fraudulent debt on Plaintiff's credit report.

41. As explained below, Synchrony's investigation was unreasonable.

42. More specifically, Synchrony should have discovered from their own records, including Plaintiff's formal dispute, that the information being reported was inaccurate and materially misleading. Plaintiff rarely used this credit card and the shopping spree that Daughter went on was out of character for Plaintiff. Plaintiff provided information showing that Plaintiff did not make the fraudulent purchases.

43. Plaintiff contends that it was unreasonable for Defendant to not contact Plaintiff for further information if needed; to not contact the San Diego Police Department; and, to not conduct a simple inquiry regarding Plaintiff's whereabouts at the time of the purchase.

44. Through this conduct, Synchrony violated Cal. Civ. Code § 1785.25(a) by furnishing information to consumer reporting agencies that Synchrony knew or should know was inaccurate or misleading.

45. Plaintiff's continued efforts to correct Defendant's erroneous and negative reporting by communicating Plaintiff's dispute was fruitless.

46. Defendant's continued inaccurate and negative reporting of the false information to Plaintiff's credit report in light of Defendant's knowledge of the actual error was willful.

47. Defendant's continued inaccurate and negative reporting of the inaccurate information to Plaintiff's credit report in light of Defendant's knowledge of the actual error was reckless.

48. Accordingly, Defendant willfully and negligently failed to comply with Defendant's respective duties to reasonably investigate Plaintiff's dispute.

49. Defendant's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

50. Defendant's conduct has caused Plaintiff's non-economic damages.

51. Plaintiff has spent countless hours disputing this inaccurate information and fraudulent debt with Defendant in an attempt to provide any and all information needed for the investigations.

52. While Plaintiff was thorough in Plaintiff's disputes at all times, Defendant merely responded with form letters that failed to take into account any of the specifics identified in Plaintiff's disputes.

53. Plaintiff's anxiety; frustration; stress; lack of sleep; nervousness; anger; and, embarrassment continues to this day because this large charge-off mischaracterizes Plaintiff as someone that avoids Plaintiff's financial obligations and significantly harms Plaintiff's credit score.

54. Plaintiff has gone through a nervous breakdown because of the stress that this as caused. The stress caused by Synchrony's actions has pushed Plaintiff to the point that she is experiencing suicidal ideation.

55. Despite Plaintiff's repeated attempts, Defendant continues to attempt to collect on a fraudulent debt and report this fraudulent debt to Plaintiff's credit report.

56. As a direct and proximate result of Defendant's willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing credit reports, preparing and mailing dispute letters, attorneys' fees, loss of credit and loss of ability to purchase and benefit from credit. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendant's inaccurate and derogatory information, without success.

57. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

//

58. Through this conduct, Synchrony has also violated Cal Civ. Code § 1798.93.

59. The continued pursuit of Plaintiff through direct collection efforts and credit

CASE NO.:                              7 OF 14                        *Macdonald v. Synchrony*
                                    **COMPLAINT**

reporting despite the fraudulent nature of these accounts shows that Synchrony took action involving an unjustifiably high risk of harm that was either known or so obvious that it should be known.

60. Since Plaintiff's efforts to be absolved of the fraudulent debts were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

## CAUSES OF ACTION CLAIMED BY PLAINTIFF
## COUNT I
## VIOLATION OF THE CALIFORNIA
## CONSUMER CREDIT REPORTING AGENCIES ACT
## CAL. CIV. CODE § 1785.1, ET SEQ.
## [AGAINST SYNCHRONY]

61. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. As discussed above, Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c).

63. Experian is a "consumer credit reporting agency" as defined by Cal. Civ. Code § 1785.3(d).

64. As detailed above, the causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

65. The previously mentioned acts and omissions constitute numerous and

multiple violations of the California Consumer Credit Reporting Agencies Act.

66. In the regular course of its business operations, Synchrony routinely furnishes information to credit reporting agencies pertaining to transactions between Synchrony and its consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

67. Because Synchrony is a partnership, corporation, association, or other entity, and it is therefore it is a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Synchrony is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if it knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

68. Since Synchrony received all documents required to determine the inaccuracy of its reporting, Synchrony should have known to update said reporting.

69. Synchrony also should have determined that its reporting was inaccurate through review of their own account notes and records; and, as a result of the information provided with Plaintiff's disputes.

## COUNT II
## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT
## CAL. CIV. CODE §§ 1788-1788.32 (RFDCPA)
## [AGAINST SYNCHRONY]

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. This action arises out of a "debt" as that term is defined by Cal. Civ. Code § 1788.2(d) that was incurred as a result of a "consumer credit transaction" as defined by Cal. Civ. Code § 1788.2(e).

72. Synchrony in the ordinary course of business, regularly, on behalf of

themselves or others, engages in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

73. The previously described acts and omissions constitute numerous and multiple violations of the RFDCPA.

74. Specifically, through this conduct, Synchrony violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations in connection with the collection of Plaintiff's alleged debt. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

75. Through this conduct, Synchrony violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the fraudulent debt in connection with the collection of the fraudulent debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

76. Through this conduct, Synchrony violated 15 U.S.C. § 1692e(5) by threatening to take action that it cannot legally take. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

77. Through this conduct, Synchrony violated 15 U.S.C. § 1692e(8) by reporting credit information regarding Plaintiff that Synchrony knew or should have known to be inaccurate. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

78. Through this conduct, Synchrony violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect the fraudulent debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

79. Through this conduct, Synchrony violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect the fraudulent debt from Plaintiff. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

80. Through this conduct, Synchrony violated 15 U.S.C. § 1692f(1) by collecting an amount not expressly authorized by the agreement creating the debt or permitted by law. This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17; thus, Synchrony violated Cal. Civ. Code § 1788.17.

81. As a result of each and every violation of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Synchrony.

## COUNT III

## VIOLATIONS OF CALIFORNIA'S IDENTITY THEFT ACT

## CAL. CIV. CODE § 1798.92-1798.97

## [AGAINST SYNCHRONY]

82. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

83. As detailed above, Plaintiff is a "Victim of Identity Theft" as that term is defined by Cal. Civ. Code § 1798.92(d).

84. Due to Synchrony's collection attempts, it is a "claimant" as that term is defined by California Civil Code § 1798.92(a).

85. The foregoing acts and omissions constitute numerous and multiple violations of the Cal. Civ. Code § 1798.93, including but not limited to each and every one of the above-cited provisions of Cal. Civ. Code § 1798.93.

86. As a result of each and every violation of Cal. Civ. Code § 1798.93, Plaintiff

is entitled to any actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5); a civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6); costs pursuant to Cal. Civ. Code § 1798.93(c)(5), attorney's fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5) and equitable relief pursuant to Cal. Civ. Code § 1798.93(c).

## COUNT IV
## TRUTH IN LENDING ACT
## 15 U.S.C. §§ 1601 ET SEQ
## [AGAINST SYNCHRONY]

87. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

88. The Truth in Lending Act generally precludes a credit card issuer from imposing more than $50.00 in liability for unauthorized use of a credit card. 15 U.S.C. § 1643.

89. The purchases on Plaintiff's credit card were each an "unauthorized use" as it was not made by a person who had actual, implied, or apparent authority for such use.

90. Plaintiff received no benefit from the unauthorized use.

91. Plaintiff provided Synchrony with notice of the unauthorized use during both a phone call and a detailed fax dispute letter on or about July 18, 2022.

92. From these communications, Synchrony had all of the pertinent information about the unauthorized use.

93. Because the charge was unauthorized, Plaintiff's liability was limited to no more than $50.00.

//

94. Nonetheless, Synchrony has demanded payment of the entire $1,228.61 charge from Plaintiff.

95. As a result, Synchrony violated the Truth in Lending Act's unauthorized use limitation contained in 15 U.S.C. § 1643.

96. Synchrony's violation of the unauthorized use limitation is subject to liability and damages pursuant to 15 U.S.C. § 1640.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against each respective defendant for:

- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A);
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d);
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);
- Punitive damages according to proof as to CCCRAA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1788.30(a);
- An award of statutory damages of $1,000.00, pursuant to Cal. Civ. Code § 1788.30(b);
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c);
- An award of actual damages pursuant to Cal. Civ. Code § 1798.93(c)(5);
- A civil penalty in an amount up to $30,000.00 pursuant to Cal. Civ. Code § 1798.93(c)(6);
- Attorneys' fees and costs pursuant to Cal. Civ. Code § 1798.93(c)(5);
- Any equitable relief the Court deems appropriate pursuant to Cal. Civ. Code § 1798.93(c);

CASE NO.:   13 OF 14   *Macdonald v. Synchrony*
COMPLAINT

- Actual damages, statutory damages as to each violation, costs, and attorney's fees. under 15 U.S.C. § 1640;
- Treble damages under Cal. Civ. Code § 3345; and,
- Any and all other relief the Court deems just and proper.

## TRIAL BY JURY

102. Pursuant to the United States' Constitution, Plaintiff is entitled to, and demands, a trial by jury.

Dated: 22 September 2022                                   Respectfully submitted,

**BARTHEL & BARTHEL, APC**

By:   /s/ Nicholas Barthel
NICHOLAS R. BARTHEL, ESQ
ATTORNEY FOR PLAINTIFF

Dated: 22 September 2022                                   Respectfully submitted,

**LOKER LAW, APC**

By:   /s/ Matthew M. Loker
MATTHEW LOKER, ESQ
ATTORNEY FOR PLAINTIFF